IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| | * |
|     PLAINTIFF, | * |
| | * |
| v. | * CASE NO. 2:07CR25-WKW |
| | * |
| CLIFFORD FERGUSON, | * |
| | * |
|     DEFENDANT. | * |

## MOTION TO SUPPRESS

    Comes now the defendant, Clifford Ferguson, by and through undersigned counsel and moves to suppress the evidence obtained from the search of the vehicle and any statement made on June 15, 2006 and in support thereof states the following:

**Facts:**[1]

    On June 15, 2006 Deputy Autery initiated a traffic stop on a white ford van with the tag number 0484LG from Kentucky on Interstate 65 at the 212 mile post north bound. Deputy Autery approached the passenger side window to ask for the drivers information such as drivers licenses and insurance. As Deputy Autery was speaking to the passenger while the driver retrieved his information he states he could smell a very strong odor of what he believed to be marijuana. Deputy Autery explained the reason be was stopped was due to a blown tag light. Deputy Autery then returned to his patrol car to check through NCIC to see if Mr. Ferguson's license was valid. As Deputy Autery waited on the information to return, he called Deputy Griffin to come back him up. Once Mr. Ferguson's driver information was shown to be current, Deputy Autery approached the driver's side of the vehicle and asked Mr. Ferguson to step back to his patrol unit so he could conduct a field interview and issue Mr. Ferguson a written warning for the traffic violation.

    As Deputy Autery was filling out the written warning, he asked W. Ferguson where they were coming from and going. Mr. Ferguson stated they were coming from Atlanta and going back

---

[1] These facts are taken almost verbatim from the investigation summary prepared by Robbie Autery.

to Louisville, KY. Deputy Autery then stated that he was off course by about 3 - 5 hours. Mr. Ferguson stated that he must have taken the wrong turn as he wanted to go up 1-75 North from Atlanta. Deputy Autery explained that 1-65 would take him back to KY but he was still way out of his way. After Deputy Autery explained how to get back to KY from 1-65, he then issued Mr. Ferguson the written warning for no tag light.

After Deputy Autery issued the written warning, he asked Mr. Ferguson if there was any contraband on his person or vehicle. Mr. Ferguson stated no. Deputy Autery then asked Ferguson for consent to search. Mr. Ferguson refused to consent.

Deputy Autery advised Ferguson that due to the strong odor of what he believed to be marijuana, he was going to search his vehicle. Deputy Autery then stepped out of his patrol unit and asked Deputy Griffin to stand with Ferguson. Then Deputy Autery approached the passenger side of the vehicle and asked the passenger to step out.

Deputy Autery then began the vehicle search. Upon the vehicle search, Deputy Autery found a plastic bag containing two small bags of marijuana and a small bag containing 20 multi-colored pills. Deputy Autery then exited the vehicle and advised Deputy Griffin to place handcufs on Mr. Ferguson. Deputy Autery then advised Mr. Ferguson he was under arrest for possession of narcotics.

Autery continued the vehicle search and he found in the very rear part of the vehicle a bulletproof vest and a brown leather bag containing 6 bundles of marijuana and two small handguns. Autery asked Ferguson whose contraband this was. Ferguson denied knowing it was in the vehicle because he stated he's been around marijuana so much that he didn't smell it. Ferguson advised Deputy Autery that the odor of marijuana smelt no different than cigarette smoke to him. Autery told Ferguson what he was charged with and he was then transported to the Chilton County Jail without incident or injury.

**Argument**

Ferguson alleges that the search of the vehicle was illegal and that any evidence found in the vehicle was illegally seized and should be suppressed. Furthermore, due to the illegal search and

seizure any statement he gave should be suppressed as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The Fourth and Fourteenth Amendments are implicated in this case because stopping an automobile and detaining its occupants constitutes a seizure within the meaning of those Amendments. *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). A traffic stop is a seizure within the meaning of the Fourth Amendment. A routine traffic stop is only a limited form of seizure, it is more analogous to an investigative detention than a custodial arrest. *United States. v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001), cert. denied, 534 U. S. 830, 122 S. Ct. 73, 151 L. Ed. 2d 38 (2001).

A search without a warrant based on probable cause is illegal, unless the Government can show that it falls into one of those limited exceptions recognized by law. One of the exceptions deals with the search of automobiles. Searches of automobiles may be conducted without a warrant if 1) there is probable cause to believe the vehicle contains contraband or other evidence which is subject to seizure under the law, and (2) exigent circumstances necessitate a search or seizure.

The Supreme Court has emphasized that before a Government agent can search a vehicle without a warrant "the overriding standard of probable cause" must be met. *United States v. Campbell,* 920 F.2d 793 (11th Cir. 1991) citing *United States v. Alexander*, 835 F.2d 1406 (11th Cir. 1988).

The Eleventh Circuit has consistently held that once an officer has briefly stopped a motor vehicle operator for the purpose of issuing a traffic violation (i.e., a ticket), the officer's continuing detention of the vehicle's occupants is authorized under the Fourth Amendment only if the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *U. S. v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999), reh'g and reh'g en banc denied, 192 F.3d 132 (11th Cir. 1999).

Here Ferguson's detention was illegal. There were no intervening circumstances and the stop was unlawful as there was no tag light violation.

3

**The Alleged Tag Light Violation Was Merely a Pretext and Illegal as a Matter of Law**

Ferguson contends that the stop by the Chilton County Sheriff's Department allegedly due to a tag light violation was simply pretextual and illegal as a matter of law.

A suspicion based on such a mistaken view of the law cannot be reasonable suspicion required for the Fourth Amendment, because the legal justification for a traffic stop must be objectively grounded. In other words, if an officer makes a traffic stop based on a mistake of law, the stop violates the Fourth Amendment. *United States. v. Twilley*, 222 F.3d 1092, 1096 (9th Cir. 2000)

This circuit has consistently held that once an officer has briefly stopped a motor vehicle operator for the purpose of issuing a traffic violation (i.e., a ticket), the officer's continuing detention of the vehicle's occupants is authorized under the Fourth Amendment only if the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999), reh'g and reh'g en banc denied, 192 F.3d 132 (11th Cir. 1999).

The traffic stop was pretextual. But under *Whren v. United States*, a traffic stop, even if pretextual, does not violate the Fourth Amendment if the officer making the stop has probable cause to believe that a traffic violation has occurred. This is an objective test based on the facts known to the officer at the time of the stop, not on the motivations of the officer in making the stop. On the other hand, if it is clear that what the police observed did not constitute a violation of the cited traffic law, there is no objective basis for the stop, and the stop is illegal. *United States v. Escalante*, 239 F.3d 678, 680-81 (5th Cir. 2001).

The officer states he stopped Ferguson for a tag light violation. No tag light violation existed. Ferguson was detained too long for a simple tag light violation.

**Detention of Ferguson Was Unreasonable and in Violation of Fourth Amendment**

The Supreme Court in *Berkemer v. McCarthy*, 468 U.S. 420, 439-440, 82 L.Ed.2d 317, 104 S.Ct. 3138 (1984) held that the analogue of the common traffic stop was the limited detention for investigation authorized by *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed.2d 889, 88 S.Ct. 1868 (1968). While *Terry* authorized a restricted incidental search for weapons when reasonable suspicion warrants such

4

a safety measure.

The Court took care to keep a *Terry* stop from automatically becoming a foot in the door for all investigatory purposes; the permission intrusion was bounded by the justification for the detention. Although facts disclosed by inquiry within this limit might give grounds to go further, the government could not otherwise take advantage of a suspect's immobility to search for evidence unrelated to the reason for the detention.

That has to be the rule unless *Terry* is going to become an open-sesame for general searches, and that rule requires holding that the police do not have reasonable grounds to conduct sniff searches for drugs simply because they have stopped someone to receive a ticket for a highway offense.

**Ferguson's Statement Should Be Suppressed**

The exclusionary rule also prohibits the introduction of derivation evidence, both tangible and testimonial, that is the produce of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search. *Murray v. United States*, 487 U.S. 533, 536-37, 108 S.Ct. 2529, 101 L. Ed. 2d 472 (1988).

The Government cannot violate the Fourth Amendment-in the only way in which the Government can do anything; namely through its agents-and use the fruits of such unlawful conduct to secure a conviction. Nor can the Government make indirect use of such evidence for its case, or support a conviction on evidence obtained through leads from unlawful obtained evidence. All these methods are outlawed, and convictions obtained by means of them are invalidated, because they encourage the kind of society that is obnoxious to free men." *Walder v. U.S.* 347 U.S. 62, 64-65, 74 S.Ct. 354, 98 L.Ed. 503 (1954).

Respectfully submitted,

> s/Susan G. James
> SUSAN G. JAMES
> Attorney at Law
> 600 South McDonough Street
> Montgomery, Alabama 36104
> Phone: (334) 269-3330
> Fax: (334) 834-0353
> E-mail: sgjamesandassoc@aol.com
> Bar No: JAM012

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 10, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

United States Attorney
P.O. Box 197
Montgomery, Alabama, 36101


    Respectfully submitted,


    s/Susan G. James
    SUSAN G. JAMES
    Attorney at Law
    600 South McDonough Street
    Montgomery, Alabama 36104
    Phone: (334) 269-3330
    Fax: (334) 834-0353
    E-mail: sgjamesandassoc@aol.com
    Bar No: JAM012