IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 02:07cr25-WKW |
| | ) | |
| CLIFFORD STRONG FERGUSON | ) | |

RESPONSE TO DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE AND STATEMENTS

Comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and hereby requests that this Honorable Court deny Defendant's Motion to Suppress. As grounds in support of this Response, the United States sets forth the following:

FACTS

On June 15, 2006, at approximately 2:30 pm, Chilton County Sheriff's Deputy Robbie Autery ("Deputy Autery") initiated a traffic stop on a vehicle traveling north bound on Interstate 65 ("I-65") for having no tag light, in violation of 32-5-240(c)(3), Code of Alabama. The vehicle is described as a white Ford van bearing Kentucky tag number 0484LG. Deputy Autery approached the passenger side of the van and asked for the driver's license and insurance. Deputy Autery could smell a very strong odor of what he believed was marijuana as he spoke to the driver from the front passenger window. After the driver gave Deputy Autery his driver's license, the deputy told the driver, now identified as Clifford Ferguson ("Ferguson"), that he was stopped because he had a blown tag light.

Deputy Autery ran an NCIC check to determine whether Ferguson had a current driver's license. Deputy learned that Ferguson's license was current. Deputy Autery asked Ferguson to step

back to his patrol unit to conduct a further field interview and to issue Ferguson a written warning.

Deputy Autery asked Ferguson questions regarding his origin and destination. Ferguson told the deputy that he was coming from Atlanta and was on his way to Louisville, Kentucky. Deputy Autery advised Ferguson that he was off his course of direction about three to five hours. Ferguson responded that he must have taken a wrong turn because he intended to travel Interstate 75 North from Atlanta. After explaining to Ferguson that he could travel to Kentucky on I-65, however, it was "out of the way," Deputy Autery issued Ferguson a written warning citation for having a blown tag light.

Deputy Autery asked Ferguson whether he had any contraband on his person or in the vehicle. Ferguson responded negatively. Deputy Autery asked Ferguson for consent to search the van. Ferguson again responded negatively. Deputy Autery advised Ferguson that due to the strong odor of marijuana coming from the van, he was going to search the van. Deputy Autery asked Deputy Griffin to stay with Ferguson, while he searched the vehicle.[1]

Deputy Autery approached the passenger side of the vehicle and asked the passenger, a young female, to step out of the van, and began his search. Deputy Autery found two small bags of marijuana and a small bag containing 20 multicolored pills. Deputy Ferguson advised Deputy Griffin to place handcuffs on Ferguson. Deputy Autery advised Ferguson that he was under arrest for possession of narcotics. Deputy Autery went back to the van to continue his search because he believed that the two small bags could not be the source of the strong odor of marijuana he smelled. Deputy Autery found, in the rear of the van, a bullet proof vest. Deputy Autery also found an

---

[1] Deputy Autery radioed Deputy Griffin earlier during the stop, and asked for Griffin's assistance, stating to Griffin that he was going to search the vehicle because of the strong odor of marijuana coming from the van.

additional six bundles of marijuana and two small handguns in a brown leather bag.

After securing the hand guns, Deputy Autery asked Ferguson who owned the contraband. Ferguson denied any knowledge of the contraband. Ferguson also stated that he had been around marijuana so much that he did not smell it. Ferguson also stated that marijuana and cigarette smoke were no different in his opinion.

On June16, 2006, Special Agent Jennifer Rudden and Chilton County Narcotics Officer Rocky Mims read Ferguson his *Miranda* rights. Ferguson agreed to talk to Rudden and Mims about the traffic stop. Ferguson advised that he was a modeling agent and was traveling with the passenger trying to get her into the Miss Kentucky pageant. Ferguson also stated that a guy named "Jock" made arrangements to ride back to Kentucky with him and at the last minute decided not to ride. Instead, Ferguson stated that "Jock" asked him to carry Jock's bag back to Kentucky. According to Ferguson, Jock was suppose to call him and tell him where to meet him or where to take the bag, and Ferguson would be paid when Ferguson got to Kentucky.

## LEGAL ANALYSIS

In his motion, Ferguson raises the following arguments: (1) the traffic stop was pretexual since no tag light violation existed and the stop was illegal as a matter of law; (2) the defendant's detention was unreasonable and in violation of the Fourth Amendment; (3) there was no probable cause to search the vehicle; and (4) the defendant's statements were fruits of an illegal search. The United States submits that the case law cited by the defendant does not support his legal claims. To the contrary, the case law concludes that Deputy Autery made a lawful traffic stop based upon reasonable suspicion that a law had been violated. Immediately after the stop, Deputy Autery smelled a strong odor of marijuana which caused him to believe that criminal activity was afoot. The

continued detention to investigate the validity of Ferguson's driver's license, and the subsequent search of the van was justified. Therefore, the defendant's motion to suppress evidence and statements should be DENIED.

> **I.   The Traffic Stop Was Not Pretexual Since No Tag Light Violation Existed, and The Stop Was Not Illegal As A Matter of Law.**

The defendant first contends that Deputy Autery's stop was pretexual since "no tag light violation existed" and the stop was illegal as a matter of law. (Doc. 13, pp.4-5). In support of his argument, Ferguson cites United States v. Twilley, 22 F.3d 1092, 1096 (9th cir. 2000). The facts of the Twilley case can be distinguished from the facts outlined in the instant case. In Twilley, the officer stopped the vehicle because he mistakenly believed that the defendant displayed only one plate, in violation of California law. The officer was wrong. Twilley at 1092. The Ninth Circuit concluded that the officer's mistake of law invalidated the stop because the stop was not supported by reasonable suspicion and therefore violated the Fourth Amendment. Id. at 1098. In the instant case, Deputy Autery stopped Ferguson based upon a valid violation of 13-5-240(c)(3), which states in pertinent part,

> § 32-5-240
> (c)Tail lamps.
>    (3) Every motor vehicle shall have a tail lamp or a separate lamp so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear. Any tail lamp or tail lamps, together with any separate lamp for illuminating the rear registration plate, shall be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted.

Code of Alabama, 1975, §32-5-240(c)(3).[2]

---

[2]   Government counsel interprets references to a tail light as termed in §32-5-240(c)(3) as the description of what is commonly referred to as a "tag light" which illuminate a

According to <u>Whren v. United States</u>, 517 U.S. 806, 809-810 (1996), "a traffic stop, even if pretextual, does not violate the Fourth Amendment if the officer making the stop has 'probable cause to believe that a traffic violation has occurred.'"  See (<u>United States v. Escalante</u>, 239 F.3d 578 (5th Cir. 2001), quoting <u>Whren</u> at 810).   If the defendant did, in fact, have a blown tag light, as Deputy Autery claims, there can be little question that Deputy Autery had a lawful and constitutional basis for stopping Ferguson's car.  See, e.g., <u>United States v. Harris</u>, 928 F.2d 1113, 1116 (11th Cir. 1991) (upholding traffic stop and finding that the arresting officer had reasonable suspicion to stop a car that he observed weaving into an emergency lane twice, where officer did not begin to follow the car until after he observed the car weave the first time); <u>United States v. Pollock</u>, 926 F.2d 1044, 1046-47 (11th Cir. 1991) (upholding a traffic stop over pretext challenge where the vehicle was observed weaving on the highway).

The Supreme Court in <u>Whren</u> explained that objective legal facts, like the existence of probable cause or reasonable suspicion, justify traffic stops.  <u>Id.</u> at 818-19.  The subjective motivation of the arresting officer does not matter if the officer has a legitimate basis for a traffic stop under the Fourth Amendment.  <u>Id.</u> at 813.  Indeed, after surveying a number of Fourth Amendment precedents, the <u>Whren</u> Court explained that these cases "foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved."  <u>Id.</u> [3]

---

rear registration plate, or tag.

[3]  The only selective motive distinguished by the Supreme Court was that of race. The Court made very clearly that selective enforcement of the law based on race is unconstitutional, the Court made similarly clear that the basis for such a challenge rests outside of the Fourth Amendment.  <u>Id.</u>  Specifically, the Court stated that "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not

Here, Defendant seeks suppression of evidence under the Fourth Amendment. Accordingly, Deputy Autery's subjective motivations do not appear to have any bearing on these proceedings. What matters here is whether Deputy Autery had adequate probable cause or reasonable suspicion to justify Defendant's traffic stop on objective, legal grounds. The primary question before the Court is whether Deputy Autery had a legitimate, objective basis for stopping Defendant's car. In sum, Defendant's traffic stop must be judged on standard, objective Fourth Amendment principles. Using such principles, the Court should find that Deputy Autery was fully justified in stopping Defendant's car for not having light illuminating his registration plates.

Moreover, the validity of the stop should be considered based upon the totality of the circumstances based upon the officer's special training, experience, and reasonable suspicion, although the defendant's actions may not be criminal on their face. See United States v. Arvizu, 534 U.S. 266, 273-294 (2002); United States v. Smith, 201 F.3d 1317, 1322-23 (11th Cir. 2000).

**II.     The Defendant's Detention Was Not Unreasonable Based Upon a Lawful Stop.**

In United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999), the Eleventh Circuit held that "[o]nce the police had validly detained Simmons, plainly they were entitled under the decisional law to conduct a variety of checks on the driver and his car, including questioning the driver about the traffic violation, requesting consent to search his car, and running a computer check for outstanding warrants." In addition, in United States v. Harris, 928 F.2d 1113, 1117 (11th Cir. 1991), the Eleventh Circuit said, "where the initial stop is legal, the officer has 'the duty to investigate suspicious circumstances that then came to his attention.'" In this case, Deputy Autery had a duty

---

the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Id.

to further investigate his suspicion that contraband may be in Ferguson's vehicle based upon the strong odor of marijuana he smelled when he first approached the vehicle. This Circuit has also ruled that "during a legal stop, an officer may ask questions, while waiting for a computer check of registration or examining a driver's license." United States v. Hernandez, 418 F.3d 1206, n.3 (11th Cir. 2005). Deputy Autery's suspicions continued to intensify after smelling the strong odor of marijuana when he learned that Ferguson's intended destination was Louisville, Kentucky. However, Ferguson was three to five hours off his course. In Simmons, (citing, United States v. Cortez, 449 U.S. 411, 418, (1981), the court held,

> The courts refrain from "indulg[ing] in unrealistic second-guessing" of officers at the scene. *United States v. Sokolow*, 490 U.S. at 11, 109 S.Ct. 1581 (citation and internal quotation marks omitted.). The determination of reasonable suspicion 'does not deal with hard certainties, but with probabilities. Long before law of probabilities was articulated as such, practical people formulated certain common sense conclusions about behavior; jurors as factfinders are permitted to do the same–and so are law enforcement officer."

Simmons, at 780.

The standard under United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001), is that the stop "may not last 'any longer than necessary to process the traffic violation' unless there is articulable suspicion of other illegal activity." See also (United States v. Boyce, 351 F.3d 1102, 1106 (11th Cir. 2003), "an officer may prolong a traffic stop if he has 'articulable suspicion of other illegal activity.'"). It was a practical, reasonable and articulable suspicion based upon Deputy Autery's training and experience, that a strong odor of marijuana is indicative of criminal activity afoot.

### III. There Was Probable Cause To Search The Vehicle.

Deputy Autery asked Ferguson for consent to search the vehicle because of the strong smell or marijuana. Ferguson refused his consent. Notwithstanding, Ferguson was not free to leave because Deputy Autery had reason to believe that evidence of other illegal activity was present in the vehicle. In Simmons, the Eleventh Circuit analyzed several issues and circumstances that it deemed relevant to the analysis of the duration of defendant's detention. The Court stated that "law enforcement purposes served by the detention, the diligence with which the police pursue[d] the investigation, the scope and intrusiveness of the detention, and the duration of the detention." (Citing United States v. Sharp, 470 U.S. 675, 685-86, (1985)). In the instant case, Deputy Autery completed the traffic stop, returned the defendant's documents, and then asked permission to search the vehicle. Ferguson refused to give consent to search the vehicle. However, Deputy Autery did searched the vehicle. Deputy Autery initially found two small bags of marijuana with a brief search of the vehicle. As a result, Ferguson was handcuffed and place under arrest. Notwithstanding the two small bags of marijuana Deputy Autery found, the deputy's training and experience lead him to believe that the two small bags could not be the source of such a strong odor of marijuana. Therefore, he continued his search. Since Ferguson had been lawful arrested for possession of contraband, any subsequent searches of the vehicle were incident to a lawful arrest. See Chimel v. California, 395 U.S. 752 (1969), United States v. Robinson, 414 U.S. 218 (1973). Once the officer makes a lawful arrest, there is no further justification or probable cause needed.

### IV. The Defendant's Statements Were Not Fruits of an Illegal Search.

On June 15, 2006, during a traffic stop, Deputy Autery located two small bags of marijuana in the defendant's vehicle. Thereafter, Deputy Autery asked Ferguson a question related to the

ownership of the marijuana. Ferguson denied knowing the marijuana was in the vehicle. On June 16, 2006, Ferguson was advised of his *Miranda* rights and agreed to give a *post-Miranda* statement. Ferguson admitted to the possession of the bullet proof vest and one of the firearms. Ferguson proclaimed no knowledge of the contraband found in his vehicle. The June 16, 2006, statement is admissible since the defendant was advised of his rights, waived his rights and agreed to speak with the law enforcement officers.

## CONCLUSION

For reasons stated above, the defendant's motion to suppress evidence seized and statements he gave, should be DENIED.

Respectfully submitted this 29th day of May, 2007.

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Tommie Brown Hardwick
TOMMIE BROWN HARDWICK
Assistant United States Attorney
1 Court Square, Suite 201
Montgomery, Alabama 36104
(334) 223-7280
(334) 223-7135 Fax
tommie.hardwick@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 02:07cr25-WKW |
| | ) | |
| CLIFFORD STRONG FERGUSON | ) | |

CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Susan G. James, Esq.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Tommie Brown Harwick
TOMMIE BROWN HARDWICK
Assistant United States Attorney
1 Court Square, Suite 201
Montgomery, Alabama 36104
(334) 223-7280
(334) 223-7135 Fax
tommie.hardwick@usdoj.gov