IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:07cr25-WKW |
| | ) | |
| CLIFFORD FERGUSON | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Defendant Ferguson filed a motion to suppress in this case (Doc. # 13), and the government has responded (Doc. # 21). The court heard testimony on the motion on June 6, 2007. For the reasons discussed below, the motion is due to be denied.

**Facts**

In the early morning hours of June 15, 2006, Robbie Autery, a deputy sheriff with the Chilton County Sheriff's Department, was on patrol on I-65 near Clanton, Alabama. From the median of the highway, Autery observed a Ford Econoline van traveling northbound on I-65 without an operational rear tag light. Autery turned on his blue lights and his "take-down" lights and pulled over the van, which was driven by the defendant, Clifford Ferguson.[1] Autery approached the passenger side of the vehicle, which was occupied by a young female, who rolled down the passenger window. Autery could immediately smell the strong odor of raw marijuana emanating from the van.

---

[1] At the hearing, the government produced and played a videotape of the stop. The court's account of the stop will not include every statement or action recorded on the videotape (Defendant's Exhibit 1), but only those specifically relevant to the court's recommendation. However, the court has considered all aspects of the stop as reflected both in testimony and on the videotape in reaching its decision.

Autery asked to see Ferguson's driver's license. Ferguson produced the license after searching for it in the far rear seat, then locating it in the front center console. Autery asked Ferguson to sit in the patrol car with him, and began to fill out a warning citation. While he wrote the citation, Autery called in Ferguson's driver's license number (the license turned out to be valid). He also called for another deputy over his Southern LINC cell phone because he thought that there were narcotics in the van based on the strong smell of raw marijuana, and he believed that he had probable cause to conduct a search. After Ferguson signed the warning ticket, Autery asked him when was the last time that "weed" was smoked in the van. Ferguson responded that it was about five hours before. At first, Ferguson explained that he and his cousin had ridden around together, but only his cousin had smoked. Then he told Autery that he did "hit the blunt" earlier.

When a second deputy (Matt Griffin) arrived, Autery asked Ferguson for consent to search the vehicle, which Ferguson declined. Autery then told Ferguson that he had probable cause based on the smell of marijuana so he was going to search the van anyway. When Autery conducted the initial search, he found two small bags of marijuana and a bag of 20 Ecstasy pills behind the driver's seat.

Autery placed Ferguson in handcuffs and told him that he was under arrest for possession of marijuana. Autery then returned to the van and completed the search, locating six one or two gallon Ziplock bags of marijuana (the total of all the marijuana found was 2.91 pounds) and two handguns in a leather bag in the rear cargo area. He also found a camouflage military flak vest in the same area.

2

Ferguson and the passenger were both arrested and transported for processing. Autery read Ferguson his Miranda rights as they drove from the scene. While they were en route, Autery commented to Ferguson that it was a shame that someone young like Ferguson's passenger was in this type of trouble. Ferguson replied that "she didn't know nothing about it."

## Discussion

1.  Traffic Stop.

The legality of the traffic stop in this case is analyzed under Terry v. Ohio, 392 U.S. 1 (1968). Pursuant to Terry, "[l]aw enforcement officers may briefly detain a person for an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged, or is about to engage, in criminal activity." United States v. Diaz-Lizaraza, 981 F.2d 1216, 1220 (11th Cir. 1993) (citing Terry v. Ohio, 392 U.S. 1 (1968)). "The Terry rationale allows police to stop a moving car based on a reasonable suspicion that its occupants are violating the law." Diaz-Lizaraza, 981 F.2d at 1220. "The reasonable suspicion required for a Terry stop is more than a hunch, at least 'some minimal level of objective justification,' taken from the totality of the circumstances." Id. at 1220-21 (citation omitted).

In this case, Autery testified that the rear tag light on the van was not working when he stopped the vehicle, and that testimony is not directly disputed by any other evidence in the record. The videotape of the stop does show the rear of the vehicle, including the tag, to be illuminated by some source. However, Autery explained to the court's satisfaction at the

hearing that the light source was the headlights of his own vehicle, combined with his white "take-down" lights, not a working tag light. No evidence before the court establishes that the tag light in question was, in fact, operational. Thus, the stop of the vehicle was lawful. See United States. v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999) ("[A] decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation occurred."); Ala. Code § 40-12-258(d) (Requiring a license plate to be lighted by a license plate lamp).

Even if the stop were "pretextual" – although defendant does not explain in his motion how this was so – the Supreme Court and the Eleventh Circuit have determined that "ulterior motives will not invalidate police conduct based on probable cause to believe a violation of the law occurred." Draper v. Reynolds, 369 F.3d 1270, 1275 (11th Cir. 2004); see also Whren v. United States, 517 U.S. 806, 812-13(1996); United States v. Holloman, 113 F.3d 192, 194 (11th Cir.1997). As the Eleventh Circuit has noted, "under Whren, the constitutional reasonableness of a traffic stop must be determined irrespective of intent, whether of the particular officer involved or of the theoretical reasonable officer." Id. (internal quotation marks and citation omitted). Thus, so long as Autery possessed probable cause to believe that defendant committed a traffic violation, the stop complied with the Fourth Amendment regardless of any desire Autery had to intercept drugs, or any other motive he might have had for pulling over the vehicle. Id.

2. Probable cause to search.

In this case, Autery's warrantless search of the vehicle after defendant declined

4

consent was also supported by probable cause. Here, Autery testified that the strong smell of raw marijuana emanated from the van when the passenger opened her window. The court is satisfied that Autery was sufficiently familiar with that odor based upon his previous experience and training to recognize it accurately.

It is clear that the smell of narcotics alone may support a finding of probable cause. See, e.g., United States v. Windrix, 405 F.3d 1146, 1152 (10th Cir. 2005) ("[T]he scent of methamphetamine, wherever detected, gives qualified officers probable cause to search for methamphetamine and evidence of methamphetamine manufacturing."); Kleinholz v. United States, 339 F.3d 674, 677 (8th Cir. 2003) ("The smell of ether might alone support a finding of probable cause."); United States v. Cephas, 254 F.3d 488, 495 (4th Cir. 2001) (The odor of marijuana alone would almost certainly have given officer probable cause to believe that contraband was present in the apartment.); United States v. Brown, 250 F.3d 739 (5th Cir. 2001) (unpublished) ('The distinct odor of burnt marijuana, by itself, will provide probable cause to search a vehicle."); United States v. Littleton, 15 Fed. Appx. 189, 193 (6th Cir.2001) (An officer's detection of the odor of marijuana in an automobile constituted probable cause to believe there was marijuana present). Accordingly, the court concludes that Autery had probable cause to search the vehicle in this case whether or not he obtained consent.[2]

---

[2] The search in this case did not exceed its permissible scope. The Tenth Circuit case cited by defendant in his supplement to the motion to suppress (Doc. #23) supports the court's view that Autery had probable cause to search the rear of the van as well as the passenger compartment based on the odor of raw marijuana. See United States v. Downs, 151 F. 3d 1301, 1303 (10th Cir. 1998). Further, Autery's seizure of the marijuana, handguns and vest from the rear cargo area did not occur until after defendant's arrest and, thus, this seizure was incident to arrest. See United States v. Goddard, 312 F.3d 1360, 1364 (11th Cir. 2002) ("Since the custodial arrest of a suspect based on

**Conclusion**

For the reasons set out above, it is the Recommendation of the Magistrate Judge that defendant's motion to suppress (Doc. # 13) be DENIED. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before June 10, 2007. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982). See Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir. 1982). See also Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981, en banc), adopting as binding precedent all of the

---

probable cause is a reasonable intrusion under the Fourth Amendment, a search incident to the arrest requires no additional justification.... In fact, a full search incident to a lawful arrest is *not only* a 'reasonable' search under the Fourth Amendment, it is *also* an exception to the warrant requirement.)(citations omitted)(emphasis in original).

In addition, the stop was not unreasonably prolonged. A "traffic stop may not last 'any longer than necessary to process the traffic violation' *unless there is articulable suspicion of other illegal activity*." United States v. Purcell, 236 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted) (emphasis added); see also United States v. Simms, 385 F.3d 1347, 1353; United States v. Boyce, 351 F.3d 1102, 1106 (11th Cir. 2003). As noted above, Autery had articulable suspicion of other illegal activity based on the fact that he detected an odor that he associated with the presence of raw marijuana emanating from the vehicle. Under these circumstances, the stop was not prolonged unnecessarily to seek consent or to conduct a search based on probable cause.

6

decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 28th day of June, 2007.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE